IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH COURTER, SR., : | CIVIL ACTION NO. **3:CV-13-2010** |
| and PATRICIA ASHLEY, : | |
| Administrators of the Estate of : | |
| Kenneth M. Courter, Jr., : | |
| : | |
| Plaintiffs : | |
| : | (Magistrate Judge Blewitt) |
| v. : | |
| : | |
| WESTFIELD INSURANCE CO., : | |
| : | |
| Defendant : | |

**MEMORANDUM AND ORDER**

**I.    Background**.

Plaintiffs, Kenneth Courter, Sr., and Patricia Ashley, as Administrators for the Estate of Kenneth M. Courter, Jr. ("decedent"),  filed a Complaint on July 26, 2013, against Defendant Westfield  Insurance Company ("Westfield" or "Defendant").[1] Plaintiffs raise two Pennsylvania state law claims, one for breach of contract and, the second for bad faith under 42 Pa. C.S.A. §8371, with respect to Defendant's denial of Plaintiffs' claim for uninsured motorist benefits for decedent, who was fatally injured in a February 22, 2012 motor vehicle accident, under an insurance policy (#WNP 7383480) Defendant issued to decedent's grandmother, Janice M.

---

[1]As Defendant points out, its correct name is Westfield Insurance Company.  Plaintiffs, Kenneth Courter, Sr., and Patricia Ahsley, are the divorced parents of decedent Kenneth M. Courter, Jr.

1

Courter. (Doc. 1). Plaintiffs submitted Exhibits with their Complaint. (Docs. 1-1 & 1-2).

Jurisdiction of this federal Court is based on diversity pursuant to 28 U.S.C. § 1332(a), as Plaintiffs reside in Pennsylvania and Defendant is an Ohio company. (Doc. 1, p. 2).

On August 22, 2013, Defendant filed an Answer to Plaintiffs' Complaint with Affirmative Defenses and an Exhibit (a copy of the insurance policy #WNP 7383480 Defendant issued to Janice M. Courter for the period from February 22, 2012 to February 22, 2013) as well as a Counterclaim seeking Declaratory Judgment, under 28 U.S.C. § 2201, that Plaintiffs are not entitled to uninsured motorist benefits under the policy Defendant issued to decedent's grandmother since decedent was not a family member who was a resident of his grandmother's household in Bushkill, PA, and thus, not an insured as defined in the policy. (Doc. 4).

On August 29, 2013, Plaintiffs filed their Answer to Defendant's Counterclaim. (Doc. 11).

On September 13, 2013, the parities filed a Joint Case Management Plan. (Doc. 12). In their Joint Case Management Plan, the parities indicated that they would jointly be filing a Motion for Bifurcation of Plaintiffs' breach of contract claim and bad faith claim in October 2013. (Doc. 12, p. 5). However, no such motion was ever filed.

After discovery was completed, the parties filed Cross-Motions for Summary Judgment, pursuant to Fed.R. Civ. P. 56, on March 31, 2014. (**Doc. 21,** Plaintiffs & **Doc. 22**, Defendant). Both parities then filed their Statement of Material Facts ("SMF") and Exhibits. (Doc. 23, Defendant & Doc. 27, Plaintiffs). The parties also filed their briefs in support of their respective motions and their opposition briefs to the other party's motion as well as Answers to the other

party's SMF.  (Docs. 30, 31, 34, 35, 37, and 38).  On May 21, 2014, Defendant filed a reply brief in support of its Summary Judgment Motion with Exhibits and a request for oral argument. (Doc. 40).   The Court granted the request of Defendant for oral argument and held argument on October 23, 2014.  (Docs. 41 & 44).  During oral argument, Plaintiffs moved to file a supplemental exhibit in support of their Motion for Summary Judgment, namely, a copy of a blank Pennsylvania application for a non-commercial driver's license, and requested that the Court take judicial notice of it.[2]  The Court granted Plaintiffs' oral motion and had the form driver's license application filed.  (Doc. 43).

The Cross-Motions for Summary Judgment are now ready for disposition.[3]  (**Doc. 21,** Plaintiffs  & **Doc. 22**, Defendant).  At oral argument, the parties agreed that this case could be decided by the Court on the Cross-Motions for Summary Judgment. The Court concurs.

The parties agree that if decedent was not a family member who was a resident of his grandmother's household, located at 1203 Resica Falls Road, East Stroudsburg (Bushkill), PA, at the time of the February 22, 2012 accident, then he was not an insured as defined in his grandmother's policy with Defendant. If decedent was not an insured, then Plaintiffs are not entitled to uninsured motorist ("UM") coverage  under the policy Defendant issued to decedent's grandmother. Plaintiffs maintain that decedent was still a resident of Janice M. Courter's (his grandmother's) household at the time of the February 22, 2012 accident since he

---

[2]The Pennsylvania application for a non-commercial driver's license can also be found at www.dmv.state.pa.us.

[3]The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 16).

3

only temporarily left her house sometime in December 2011, to attend college in Reading, PA, and that he intended to return to his grandmother's house.  Thus, Plaintiffs argue that Defendant beached the insurance contract it had with decedent's grandmother by denying their claim for UM coverage.  Plaintiffs now move for summary judgment on their breach of contract claim, and seek the Court to declare that decedent was a family member of Janice M. Courter at the time of the February 22, 2012 accident.  (Doc. 21).

Defendant contends that at the time of the February 22, 2012 accident, decedent was not a "family member" as defined in the insurance policy Defendant issued to Janice M. Courter since he was not a resident of her household, and he was not an "insured" under the policy. Defendant also contends that before the February 22, 2012 accident, sometime in December 2011, prior to Christmas, decedent had been asked to leave the home of Janice M. Courter after a dispute with his father.  Defendant points out that after decedent moved out of said house, neither his father nor his grandmother, Janice M. Courter,  knew of his whereabouts. Defendant further contends that decedent's father and grandmother did not know decedent enrolled in a college in Reading, PA, until after his death.  Defendant moves for summary judgment on its Counterclaim seeking a declaration that it is not obligated to provide UM benefits to Plaintiffs under the insurance policy held by decedent's grandmother, Janice M. Courter.

**II.** **Undisputed Material Facts.**

As stated, both parties have filed their SMF's as required by Local Rule 56.1, M.D. Pa. (Docs. 23 (Defendant) and 27 (Plaintiffs)).  Both parties also properly  filed  responses to other

party's SMF.  (Docs. 34 (Defendant) and 37 (Plaintiffs)).  Further, both parties offered evidentiary support for their factual paragraphs contained in their SMF.

The Court finds the following facts to be undisputed and supported by the record.  (*See* Docs. 23 and 27).

On February 8, 2012, Janice M. Courter submitted an auto insurance policy application with Defendant and listed only herself as a driver.  Decedent was not listed as either a driver or a resident of Janice M. Courter's 1203 Resica Falls Road home on her auto insurance policy application.

Defendant issued Janice M. Courter a Wespak Policy, which included a personal auto insurance policy #WNP 7383480 for the period from February 22, 2012 to February 22, 2013. (Doc. 4, Ex. A). The policy also insured Janice M. Courter's household, located at 1203 Resica Falls Road, East Stroudsburg (Bushkill), PA.  Janice M. Courter was the only insured driver identified in the policy.  Janice M. Courter was the grandmother of decedent. The policy which Defendant issued Janice M. Courter had a UM Endorsement which provided that Defendant "will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury: 1. sustained by an insured; and 2. caused by an accident."  The UM Endorsement also provided that "'Insured' as used in this endorsement means: 1. You or any family member."  "Family member" was defined in the policy as: "3. 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household.  This includes a ward, foster child or any person under the age of 21 who is in your care or the care of any family member."

5

On February 22, 2012, decedent was riding as a passenger in the vehicle of tortfeasor Abelino Rodriguez and, he was involved in an accident and sustained fatal injuries.  Decedent later died from his injuries on February 27, 2012. The police report listed decedent's address as 614 Birch Street, Reading, PA, the house of Rodriguez's mother, Wanda Rivera. The Death Certificate stated that decedent lived in Reading. The obituary of decedent listed his address as Albrightsville, the town where decedent's mother lived, and stated that he worked in Reading and attended Reading Community College.   Decedent was not at fault in the  accident since he was only a passenger. At the time of the accident, Abelino Rodriguez was uninsured.   Also, at the time of the accident, Abelino Rodriguez was fleeing from the police in Reading, PA.

Decedent's father, Kenneth Sr. and his grandmother, Janice M. Courter, did not attend decedent's funeral.

On September 18, 2012, a claim was submitted to Defendant for UM benefits for decedent under Janice M. Courter's policy.   Defendant denied the claim since it maintained that decedent was not a resident of Janice M. Courter's household at the time of the accident, and thus was not covered under Janice M. Courter's  policy for UM benefits.

In 2010, decedent moved in with his father Kenneth Sr., and his father was living at the 1203 Resica Falls Road home of  Janice M. Courter, the grandmother of decedent and the mother of Kenneth, Sr.  From 2010 until sometime in December 2011, decedent, for the most part, lived  with his father Kenneth, Sr., at  1203 Resica Falls Road.  Prior to Christmas in December 2011, decedent left the 1203 Resica Falls Road home of Janice M. Courter after he had an argument with his father mostly about his girlfriend. Kenneth Sr. told  decedent that he

"need[ed] to take [his] girlfriend and get off the property" and that his girlfriend was "not welcome [at the 1203 Resica Falls Road home of Janice M. Courter]."  Decedent and his girlfriend then got in their car and left the 1203 Resica Falls Road home of Janice M. Courter. Janice M. Courter was not present at the time of the argument and when decedent left her home.  After decedent left her house, Janice M. Courter intended to move back into her old bedroom that decedent had used.

About one week after decedent left the stated home of Janice M. Courter, Kenneth Sr. saw him in front of a store in Marshalls Creek and that was the last time the two ever spoke. After decedent left the 1203 Resica Falls Road house of Janice M. Courter, he never returned to that address.

Kenneth Sr. did not know where decedent lived after decedent left the home of Janice M. Courter until shortly before the February 22, 2012 accident when he found out decedent moved to Reading, PA.   Janice M. Courter testified that she did not know why decedent went to Reading, and that when she first found out that decedent left her 1203 Resica Falls Road house, she did not know he was going to attend college.  Janice M. Courter also testified that she did not know that decedent signed up for college in Reading until after the accident.

Decedent moved to Reading, PA, after the argument with his father and, he was living with his maternal aunt, Leira Arguizoni, at 545 Birch Street.   Decedent submitted an application to attend Reading Area Community College ("RACC") on November 30, 2011, and he listed his address as 545 Birch Street, Reading, PA. Decedent listed his aunt, Leira Arguizoni, as his emergency contact on his application.  On the 2011-2012 Verification Worksheet

7

regarding his application for financial aid to attend RACC, seemingly signed by decedent and his mother Patricia Ashley, decedent listed himself and his mother as his household members. Decedent did not list either Janice M. Courter or Kenneth Sr. on the Worksheet as his household members.   Regarding the Parent's 2010 Income Information on the Verification Worksheet, decedent indicated that his parent had "no wages or taxable income in 2010" and received food stamps.  Nobody in Janice M. Courter's household was receiving food stamps. On the 2010, 2011 and 2012 tax returns filed by Kenneth Sr., his daughter Jessica Courter was listed as his dependant and decedent was not listed.

    As mentioned, Kenneth Sr. did not know that decedent actually enrolled in Reading Area Community College until after the accident.  Kenneth Sr. did not know that decedent moved to Reading   until shortly before the accident.  Janice M. Courter did not know that decedent actually enrolled in Reading College until after the accident. (Doc. 40-1).

    Decedent decided to leave his aunt's house in Reading since he did not want to abide by her rules, including her rule to stay away from Abelino Rodriguez.  Decedent then moved in with Rodrigeuz and Rodriguez's mother, Wanda Rivera, at 614 Birch Street, Reading, PA. Decedent's sister Jessica Courter stated that decedent did not return to live with his father at the 1203 Resica Falls Road house after decedent left his aunt's house in Reading since he did not like to follow his father's household rules.  Jessica Courter stated that decedent seemingly could do whatever he wanted to do living with Rodriguez.  Rodriguez stated that decedent told him that he had to leave his aunt's house in Reading (which he mistakenly thought was decedent's grandfather's house) since decedent was coming home late and not following the curfew rules.

8

(Docs. 23-17).  Rodriguez stated that decedent, with all of his belongings, then moved in with him a few days after New Years in 2012.  Rodriguez stated that decedent stayed at his mother's house (Wanda Rivera's house) continually from January 2012 until the February 22, 2012 accident, and that during this entire time decedent did not sleep anywhere else.  Decedent had all of his clothes at Rodriguez's house, he slept on a futon and, Rodriguez's family paid for his food and did not charge him rent. Rodriguez stated that decedent had no intention of returning to live with his father at the 1203 Resica Falls Road house since decedent had a warrant out for his arrest in the Pocono area. Rodriguez stated that decedent was only temporarily living with him until decedent could get his own apartment, and that he was not in a rush to kick decedent out.

     Rodriguez's mother, Wanda Rivera, who lived with Abelino at 614 Birch Street, Reading, PA, stated in her Sworn Statement that she took decedent into her house about two months before the fatal accident. Rivera said that decedent moved in to her house after his aunt told him he had to leave her home and he brought all of his belongs.  Rivera stated that she told decedent he could stay with her as long as he wanted. Rivera stated that decedent told her "he was eventually going to get a room of his own." Rivera also stated that "decedent never intended to go back to his father's house" and, that "his parents wanted nothing to do with him." Further, Rivera stated that after the accident, Kenneth Sr. told her over the phone that he wanted nothing to do with decedent, and that she had to sign the medical consent form for

9

decedent's surgery and that all of the hospital forms had her address on them.[4]

The Court finds no evidence that decedent ever told either Rodriguez or Wanda Rivera, that he planned to move back with his father into the 1203 Resica Falls Road house owned by his grandmother, Janice M. Courter.  In fact, as mentioned, Rodriguez stated that decedent had no intention to return to the 1203 Resica Falls Road house since decedent had an outstanding arrest warrant in that area.

### III.    Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving

---

[4] At the oral argument held in this case on October 23, 2014, Plaintiffs' counsel moved to strike the Sworn Statement of Wanda Rivera (Doc. 23-18) since she could not be deposed.  The Court declines to strike the Sworn Statement of Wanda Rivera and shall consider it herein. See *Bender v. Norfolk Southern Corp.*, 994 F.Supp.2d 593, 599 (M.D.Pa. 2014)("Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial. *See* Fed.R.Civ.P. 56(c)(2).")(emphasis original).

party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, the Third Circuit indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d

Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination.").

**IV.     Discussion.**

As stated above, this Court has diversity jurisdiction, pursuant to 28 U.S.C. §1332, over Plaintiffs' Complaint claiming breach of the insurance contract and bad faith. Plaintiffs reside in Pennsylvania and Defendant is an Ohio company. (Doc. 1, p. 2).

Defendant's Counterclaim is filed under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, in order to decide a question in actual controversy between the parties. The Declaratory Judgment Act provides this Court with the discretionary authority to grant declaratory relief. *See State Auto Ins. Co. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000).

As noted, the parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c)(1).

In making an insurance policy coverage determination, the court must initially decide the scope of the insurance coverage and then review the allegations raised in the pleading to see if they would fall within the scope of the policy if proven. *See Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa. Super. 55, 59, 639 A. 2d 1208 (1994) (citation omitted). Further, under Pennsylvania law, the interpretation of an insurance contract is a question of law for the court to decide. *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citation omitted).[5]

---

[5]Pennsylvania substantive law is utilized in this diversity case as this Court sits in Pennsylvania. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).   Thus, we shall apply Pennsylvania law with

The Third Circuit Court in *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 198 (3d Cir. 2006), stated:

> [I]n Pennsylvania a court construes ambiguities in an insurance policy strictly against the insurer. *See, e.g., Selko v. Home Ins. Co.*, 139 F.3d 145, 152 n. 3 (3d Cir. 1998) (*citing Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa. 1983)). Nevertheless, in Pennsylvania, and no doubt elsewhere, "[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it." *Selko*, 139 F.3d at 152 n. 3 (internal citations and quotation marks omitted). In construing policy language, courts should consider any special usage "[w]here terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense [.]" *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 781 A.2d 1189, 1193 (Pa. 2001)."

*See also State Farm v. Dunleavy*, 197 F. Supp. 2d 183, 186-87 (E.D. Pa. 2001).

The Court must examine the evidence to determine if decedent was a resident of his grandmother's house at the time of his death in February 2012.

In the case of *Travelers Personal Ins. Co. v. Estate of Parzych*, 675 F.Supp.2d 505, 509 (E.D.Pa. 2009), the Court stated:

> The term "resident" has been analyzed thoroughly by the courts of Pennsylvania and the Third Circuit.[FN2] *Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.* [545 A.2d 343 (Pa. Super. 1988)] is the most oft-cited Pennsylvania State court case regarding the definition of a "resident" in the insurance policy context. 376 Pa.Super. 109, 545 A.2d 343 (1988).[FN3] The court defined "residence" by distinguishing it from "domicile"—"domicile" being "where a man has his true, fixed and permanent home ... to which ... he has the intention of returning," and

---

respect to the insurance coverage issue as the events in question all occurred in PA.

> "[r]esidence being a factual place of abode." *Id.* at 346 (internal quotation marks omitted). The court determined that residence requires "only physical presence" and "carr[ies] the more transitory meaning." *Id. Amica*'s progeny explain that "residence" lacks intent and is defined purely in terms of physical facts. *See Nationwide Mut. Ins. Co. v. Budd–Baldwin,* 947 F.2d 1098, 1102 (3d Cir.1991); *Allstate Prop. & Cas. Ins. Co. v. Jaffe,* No. 07–3003, 2008 WL 3911048, at *2 (E.D.Pa. Aug. 21, 2008). Moreover, the Third Circuit, in *St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428 (3d Cir.1991), noted that in this context the word "resides" [FN4] "contemplates, at a minimum, some consistent, personal contact with that person's home. Occasional, sporadic, and temporary contacts are insufficient." [FN5] *Id.* at 1431–32.

> FN2. Pennsylvania law applies. The job of this Court is to predict how the Pennsylvania Supreme Court would decide this case. *See Debiec v. Cabot Corp.,* 352 F.3d 117, 128 (3d Cir.2003).

> FN3. In *Amica,* the court examined an insurance policy that defined "family member" in the same way it is defined in both Jacqueline and Julie's policies. *See id.* at 344 n. 1.

> FN4. A resident is "one who resides or dwells in a place for a period of more, or less, duration." *Black's Law Dictionary* 1309 (6th ed.1990).

> FN5. In *Lewis,* the court was concerned with the phrase "living with you" rather than "resident in your household," but considered the phrases to be similar in its analysis. 935 F.2d at 1432.

The Court agrees with Defendant that it is entitled to summary judgment on its Counterclaim seeking a declaration that it is not obligated to provide UM benefits to Plaintiffs under the insurance policy held by decedent's grandmother, Janice M. Courter, since decedent was not a resident of his grandmother's house at the time of his death. The record shows that after decedent had an argument with his father sometime before Christmas in 2011, he moved

out his grandmother's house and never returned.  The record also shows that decedent expressed no intention to return to his grandmother's house to live.  In fact, decedent told Rodriguez that he could not return to the area where his grandmother's house was located since there were arrest warrants for him there.  We find that the undisputed evidence, detailed above, shows decedent had insufficient contacts with grandmother's house after he moved out to establish residency there.  The evidence also shows that decedent had no physical presence in his grandmother's house after he moved out.

Additionally, the Court agrees with Defendant that "there is absolutely no evidence in the record that the decedent left 1203 Resica Falls Road for the purpose of attending college and, thus, there is no 'dispute' in this regard."  As Defendant points out, "Patricia Ashley [decedent's mother] explained that the decedent contacted her **after he had gone to Reading and was living with her sister** for information to complete his [college] application." (Emphasis original).  The Court also agrees with Defendant that "all of the evidence confirms that the decedent left 1203 Resica Falls Road following an argument with his father."  (Doc. 40, pp. 10-11 & Doc. 40-1).[6]  Further, the Court agrees with Defendant that there is no support for Plaintiffs' contention that decedent only temporarily left his grandmother's 1203 Resica Falls Road house to attend college in Reading and that his intent was to ultimately return to this house at some unknown time in the future.   In any event, as Defendant correctly recognizes,

---

[6]At oral argument, Plaintiffs' counsel conceded that there were inconsistencies in the Affidavits of Kenneth Sr. and Janice M. Courter.  Thus, the Court relied more on the deposition testimonies of Kenneth Sr. and Janice M. Courter which Defendant attached to its reply brief, Doc. 40-1.

15

residence requires "only physical presence" and that "under Pennsylvania law intention is not a relevant factor in determining residency." (*Id.*, pp. 11-12, citing *Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.,* 545 A.2d 343, 346 (Pa. Super. 1988)). *See also Travelers Personal Ins. Co. v. Estate of Parzych*, 675 F.Supp.2d at 509.

At oral argument, Plaintiffs stressed that five days before the accident, decedent renewed his Pennsylvania driver's license and certified on his application that his address was his grandmother's 1203 Resica Falls Road house.  Also, as stated, Plaintiffs' counsel submitted a blank Pennsylvania application for a non-commercial driver's license as a supplemental exhibit. (Doc. 43).  Plaintiffs also argue that decedent kept some of his personal items at 1203 Resica Falls Road, received mail there, and kept in contact with his sister and grandmother *via* telephone and facebook.  The Court concurs with Defendant's argument that decedent's driver's license application only indicated that decedent may have intended to return to his grandmother's house at some time in the future, and that this is not a relevant factor for present purposes.  *See Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co., supra*.  Also, as Defendant pointed out, decedent did not yet have his own apartment and address in Reading at the time and, he was only temporarily living with Rodriguez and Rodriguez's mother until he could find a place of his own.  Further, based on our discussion above, Defendant correctly states that there is no dispute "that the decedent did not have any **actual, physical presence** at 1203 Resica Falls Road after he left in  November/December 2011."  (Doc. 40, p. 12)(emphasis original).  There is also no dispute that after decedent left 1203 Resica Falls Road he never visited this house again, and he slept and ate his meals elsewhere.

As such, summary judgment shall be granted in favor of Defendant and against Plaintiffs.

**V.      Conclusion.**

Based on the foregoing, the Court shall grant Defendant's Summary Judgment Motion **(Doc. 22)** and shall deny Plaintiffs' Summary Judgment Motion **(Doc. 21)**.

An appropriate Order shall be issued.


                                **s/ Thomas M. Blewitt**
                                **THOMAS M. BLEWITT**
                                **United States Magistrate Judge**


**Dated: October 28, 2014**